IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

_____

| | | |
|---|---|---|
| OLIVER EMANUEL PEARSON, | ) | Cause No. CV 11-105-M-DWM-JCL |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | FINDINGS AND RECOMMENDATION |
| | ) | OF U.S. MAGISTRATE JUDGE |
| WARDEN TOM GREEN; | ) | |
| ATTORNEY GENERAL OF | ) | |
| THE STATE OF MONTANA, | ) | |
| | ) | |
| Respondent. | ) | |

_____

On July 29, 2011, Petitioner Oliver Emanuel Pearson filed this action seeking a writ of habeas corpus under 28 U.S.C. § 2254. Pearson is a state prisoner proceeding pro se.

**I. Preliminary Screening**

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts requires courts to examine the petition before ordering the respondent to file an answer or any other pleading. The petition must be summarily dismissed "[i]f it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." *Id.* If summary dismissal is

not warranted, the judge must order the respondent to file an answer, motion, or other response or "to take other action the judge may order." *Id.*

A petitioner "who is able to state facts showing a real possibility of constitutional error should survive Rule 4 review." *Calderon v. United States Dist. Court,* 98 F.3d 1102, 1109 (9th Cir. 1996) ("*Nicolaus*") (Schroeder, C.J., concurring) (referring to Rules Governing § 2254 Cases). Consideration under Rule 4 "may properly encompass any exhibits attached to the petition, including, but not limited to, transcripts, sentencing records, and copies of state court opinions. The judge may order any of these items for his consideration if they are not yet included with the petition." Advisory Committee Note (1976), Rule 4, Rules Governing § 2254 Cases. "[I]t is the duty of the court to screen out frivolous applications and eliminate the burden that would be placed on the respondent by ordering an unnecessary answer." *Id.*; *see also* 28 U.S.C. § 2243.

## II. Background

On July 12, 2008, Pearson was involved in an accident in which another person was seriously injured. Although Pearson either did not remember or did not accurately remember the accident, other evidence indicated he was the driver. He left the scene. Pet. Att. (doc. 1-1) at 1; Change of Plea Tr. (doc. 19-1) at 13:13-14:12 (reciting evidence).

Pearson was charged in Montana's Eleventh Judicial District Court, Flathead County, with criminal endangerment, leaving the scene of an accident resulting in serious bodily injury, and negligent vehicular assault, all felonies. Change of Plea Tr. (doc. 19-1) at 5:20-25; Judgment (doc. 13-2 at 1). To prove leaving the scene, the State had to prove that Pearson was driving the car and was at least aware of a high probability that someone was injured in the accident. *See* Mont. Code Ann. §§ 45-2-101(35), 61-7-103(1) (2007).

On January 13, 2009, Pearson's counsel received a report from Dr. Trontel, a clinical psychologist retained by the defense to review the police reports and other documents connected with the case. Dr. Trontel found that the documents "did not reveal convincing evidence of serious and persistent cognitive disruption" that might have caused Pearson to behave as he did at the scene of the accident. Dr. Trontel also noted that Pearson "was able to give an account of events soon after the accident, arguing against marked and prolonged [cognitive or neurological] disruption." Dr. Trontel did not consider whether Pearson was, as of January 2009, suffering from neurocognitive deficits. Trontel Report (doc. 13-6 at 12-14).

On January 22, 2009, pursuant to a plea agreement, Pearson entered a *nolo contendere* plea to leaving the scene of an accident. The State dismissed the other charges and withdrew its petition to have Pearson sentenced as a persistent felony

offender, reducing the maximum penalty from one hundred to ten years. *Compare* Mont. Code Ann. § 45-18-502(1) *with id.* § 61-7-103(2)(b). Pearson was sentenced to five years in the custody of the Department of Corrections, with all time suspended. Written judgment was entered on April 1, 2009. *See* Change of Plea Tr. (doc. 19-1) at 17:18-18:5; Judgment (doc. 13-2 at 1-2). Pearson did not appeal.

On July 15, 2009, Pearson moved to withdraw his guilty plea and filed a petition for postconviction relief. His motion to withdraw stated that he was "still in shock from the accident when I entered the plea." Mot. to Withdraw (doc. 13-3 at 4). His postconviction petition alleged ineffective assistance of counsel because counsel knew Pearson was suffering from a head injury and yet "spoke to two doctors that would only testify for the State" and "failed to ask for an opinion of a doctor on my behalf." Postconviction Aff. (doc. 13-5 at 17). On September 29, 2009, the trial court denied both the motion and the petition. Order (doc. 13-5 at 39-43); Case Register Reports[1] (doc. 13-1 at 2, doc. 13-4 at 1).

On May 14, 2010, counsel appeared for Pearson, Notice of Appearance (doc. 13-6 at 3), and, on May 28, 2010, filed a motion for new trial, Mot. for New Trial (doc. 13-6 at 4-9). Pearson alleged he sought but was unable to obtain mental health

---

[1] The motion to withdraw guilty plea was filed in the criminal case. A separate case was opened for the postconviction petition.

treatment while he was detained in the county jail before trial. He also contended that, when he arrived at Montana State Prison to serve a separate sentence, he was treated for post-traumatic stress disorder. That treatment prompted him to remember that he was not driving when the accident occurred. Due to post-traumatic stress, he was "unable to access this information until after he pled guilty." Second Mot. for New Trial (doc. 13-6 at 5-6). In support of his motion, he submitted an affidavit as well as a sick call slip and response to a grievance, *see* Pearson Aff. (doc. 13-6 at 15-16); Exhibits (doc. 13-6 at 19-20), relating to his treatment requests at the jail. He also submitted an affidavit from Dr. Harold Buttram, a general practice physician in Pennsylvania. Dr. Buttram averred, in pertinent part:

> [I]t is my opinion that Mr. Pearson could have been suffering from post-traumatic stress disorder as a result of an accident that occurred on July 12, 2008. Mr. Pearson's post-traumatic stress disorder may have prevented Mr. Pearson from properly recalling the events that occurred at the time of the crash. It is possible that six months after the accident, when Mr. Pearson entered his plea on January 22, 2009, his post-traumatic stress disorder may have prevented him from recalling who was driving the car and other specific details of the crash.

Buttram Aff. ¶ 4 (doc. 13-6 at 17-18).

The State denied there was sufficient evidence to warrant a new trial, because Pearson's mother and a convenience store clerk had told police that Pearson was driving. Resp. to Mot. (doc. 13-6 at 30-31). The State also filed an affidavit from

defense counsel and Dr. Trontel's report.

On November 9, 2010, the trial court denied relief. Among other things, it "note[d] that the report of Dr. Trontel discusses the ability of Pearson to recall some of the events immediately after the accident, as reflected by the records of the hospital emergency room physician which, in Dr. Trontel's opinion, calls into question Pearson's credibility about his lack of memory." *Id.* (doc. 13-6 at 38).

Pearson appealed, once again acting pro se. Pet. Br. Ex. (doc. 2-2 at 9-10). He alleged new claims. *See* Appellant Br. (doc. 13-11 at 2-3), *Pearson v. State*, No. DA 10-0624 (Mont. Apr. 4, 2011); *see also* Appellant Aff. (doc. 13-11 at 21-23). On March 16, 2011, Pearson filed a petition for writ of habeas corpus in the Montana Supreme Court, again alleging that his conviction was invalid because he was denied mental health treatment and pled no-contest while he was suffering from a mental disease or defect. Petition (doc. 13-17 at 1-6). The petition was denied on May 11, 2011. Order (doc. 13-18 at 1-3). On June 28, 2011, the Montana Supreme Court summarily affirmed the trial court's denial of postconviction relief. Order (doc. 13-14 at 1-4).

Pearson filed his federal petition on July 29, 2011. He filed a petition and brief in support and attached various appendices and exhibits. Following an Order, he also filed an Amended Petition, using the Court's standard form, and again attached

appendices and exhibits.

### III. Allegations

Pearson alleges that his plea was involuntary because he was suffering from a closed head injury and post-concussion syndrome when he entered it, his attorney should have questioned him about that, and he sought medical treatment while he was in pretrial detention but did not obtain it. Am. Pet. (doc. 6) at 4 ¶ 15A & Am. Pet. App. (doc. 6-1) at 1; *see also* Pet. (doc. 1) at 4, Pet. App. (doc. 1-1) at 3. Pearson also alleges that his conviction was obtained by violation of his Fifth Amendment right against self-incrimination, Am. Pet. at 4 ¶ 15B & Am. Pet. App. at 2, Pet. at 5; that witness Kevin Dixson said in a telephone interview he could not recall what he wrote in the statement he gave on August 11, 2008, Am. Pet. at 4 ¶ 15B & Am. Pet. App. at 2, Pet. at 5; that the prosecution failed to disclose exculpatory evidence, that is, "material DNA blood and fluid samples," Am. Pet. App. at 3, Pet. at 5; and that the trial court erred in not obtaining a waiver of his right to jury trial before conducting a bench trial, Am. Pet. App. at 4. Pearson also seems to allege that there was no evidence to show he knew anyone was injured, *see* Pet. Br. (doc. 2) at 4, and that he was not, in fact, driving the car, *see, e.g.*, Letter (doc. 1-3) at 1.

### IV. Analysis

Not all of Pearson's allegations in this Court were raised in state court, and

some differ somewhat from those he raised in state court. Although some or all may be barred on grounds of procedural default or the federal limitations period, the record shows that his claims lack merit. Accordingly, it is more efficient to proceed to the merits. *See, e.g.*, 28 U.S.C. § 2254(b)(2); *Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997) (making detailed analysis of constitutional issue despite outstanding question as to procedural bar); *Gutierrez v. Griggs*, 695 F.2d 1195, 1198 (9th Cir. 1983).

**A. Voluntary Nature of Plea**

Pearson alleges that his plea was involuntary because he was suffering from a closed-head injury and post-concussion syndrome at the time he entered it, yet was denied treatment at the detention center. He also alleges that counsel should have questioned him regarding mental disease or defect at the sentencing hearing, which was held at the same time as the change of plea hearing. To show ineffective assistance, Pearson must show both that counsel's performance was unreasonable and that he was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984). "[T]here is no reason . . . to address both components of the inquiry if the [petitioner] makes an insufficient showing on one." *Id.* at 697.

**1. Competence**

A defendant is competent to plead guilty or stand trial if he has "sufficient

present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him." *Moran*, 509 U.S. at 396 (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam)); *see also* Mont. Code Ann. § 46-14-103 (2007). "A competency determination is necessary only when a court has reason to doubt the defendant's competence." *Godinez v. Moran*, 509 U.S. 389, 402 n.13 (1998).

The transcript of Pearson's change of plea hearing shows that he responded appropriately to questions, said he understood what he was doing, and wanted to proceed. Change of Plea Tr. (doc. 19-1) at 6:13-13:10. He understood the nature of the charge, *id.* at 7:3-16, and the consequences of his plea, *id.* at 11:6-14, 12:23-13:7. The trial court had no reason to question his competence, because the record does not remotely suggest that Pearson lacked competency on the applicable standard.

Further, counsel's questions at the plea colloquy demonstrated that Pearson had consulted with his lawyer, and counsel believed Pearson had a rational and factual understanding of the proceedings and wanted to plead no-contest. *E.g.*, Change of Plea Tr. (doc. 19) at 4:17-22, 6:13-7:2, 9:19-10:20, 11:3-14. In addition, though Pearson did not assert in the postconviction proceedings that counsel should have questioned his competence to enter a plea, counsel averred that he "believe[d] Mr. Pearson understood" what he was doing and made a voluntary choice based on "his

acceptance with [sic] and execution of the plea agreement in this case." Hinchey Aff. (doc. 13-5 at 34-35). And, of course, counsel obtained an expert's opinion on the matter. Trontel Report (doc. 13-6 at 11-14). To whatever extent Pearson claims the jail's denial of mental health treatment coerced him into pleading no-contest, the record and trial counsel's reasonable performance refute that claim as well.

### 2. Defense of Mental Disease or Defect

Under Montana law, a defendant may attempt to negate the mental-state element of an offense by introducing evidence of "an organic, mental, or emotional disorder that is manifested by a substantial disturbance in behavior, feeling, thinking, or judgment to such an extent that the person requires care, treatment, and rehabilitation." Mont. Code Ann. §§ 46-14-101(2)(a) (2007). Pearson could have pursued a defense on these lines only if he had a disorder so significant that it prevented him from forming an awareness of a high probability that someone was injured at the scene. *Id.* §§ 45-2-101(35), 46-14-102.

Despite being represented by counsel in state postconviction proceedings, Pearson did not produce evidence from an expert willing to testify that he had a mental disturbance of that order. Dr. Buttram's affidavit and Pearson's claimed memory recovery, even taken together, do not get to the heart of the issue. They are not evidence that Pearson was unable to act knowingly.

As for the relevance of Pearson's mental state to his sentence, he still can show neither deficient performance nor prejudice. Counsel obtained an expert's evaluation, but, apparently like postconviction counsel, he could not substantiate a claim. And Pearson received exactly the sentence he bargained for.

### 3. Recovered Memory

Finally, even in its own terms, Pearson's recent realization that he was not the driver does not retroactively make his plea involuntary at the time it was made. When he did not remember, or wrongly remembered, the accident, he nonetheless acknowledged that the State had enough evidence to prove him guilty beyond a reasonable doubt. That is why he chose to plead no-contest. Change of Plea Tr. at 10:17-20.

All claims relating to Pearson's mental state either at the time of the crime or at the time he entered his no-contest plea should be denied.

### B. Self-Incrimination

Pearson pled no contest. He admitted only that the State had evidence sufficient to convict him beyond a reasonable doubt. He did not have to, and did not, admit either the truth of the State's accusation or personal culpability. Change of Plea Tr. at 10:14-20, 11:6-14; Mont. Code Ann. § 46-6-105(1) (2007); *North Carolina v. Alford*, 400 U.S. 25, 35-36 & n.8 (1970) ("Implicit in the nolo contendere

cases is a recognition that the Constitution does not bar imposition of a prison sentence upon an accused who is unwilling expressly to admit his guilt but who, faced with grim alternatives, is willing to waive his trial and accept the sentence."). This claim should be denied.

### C. Dixson's Statement

Whether a witness remembers what he wrote in a statement in August is not particularly probative of any testimony he may give about an accident that occurred in July. In addition, Dixson's statement was not the only evidence against Pearson, nor was his name mentioned among the witnesses whom the State intended to call in its case-in-chief. Change of Plea Tr. (doc. 19-1) at 13:13-14:12. This claim should be denied.

### D. "Exculpatory" Evidence

Pearson's allegation regarding "material DNA blood and fluid samples" is unclear. He says:
> As mention from Trooper Glen Barkus's own investigation report, all samples were sent to Missoula Forensic Science Division for DNA analysis. When the results come back, the evidence will comfort [sic] that Pearson was the driver at the time of the crash. "I challenge those Results!" Specifically the blood on the unbroken window.

Am. Pet. App. (doc. 6-1) at 3.

At any rate, it is reasonably clear that samples were taken but not analyzed. *See* State Resp. to Postconviction Pet. (doc. 13-5 at 28-29, 30); Hinchey Aff. (doc. 13-5

at 34 ¶ 10). "[T]he police do not have a constitutional duty to perform any particular tests." *Arizona v. Youngblood*, 488 U.S. 51, 59 (1988). Pearson cannot show that the State failed to disclose exculpatory evidence in its possession. This claim should be denied.

**E. Waiver of Jury Trial**

No waiver of jury trial was required as a precondition to bench trial because there was no trial. *Compare* Mont. Code Ann. § 46-16-105 (2007) (guilty plea) *with id.* § -110 (right to jury trial and waiver). This claim should be denied.

**F. Actual Innocence**

Although "actual innocence" may not be an independent ground for federal habeas relief, *see Herrera v. Collins*, 506 U.S. 390, 403 (1993),[2] Pearson appears – with extremely liberal construction – to allege it in two respects. He seems to assert that he did not know the accident involved injury, and he asserts that he was not driving the vehicle.[3]

---

[2] *Herrera* was a capital case, so the Court did not decide whether someone not under sentence of death would be entitled to vacatur of the conviction or a new trial, as opposed to vacatur of the death sentence. But Chief Justice Rehnquist, writing for the majority, pointed out, "[T]here is no guarantee that the guilt or innocence determination would be any more exact. To the contrary, the passage of time only diminishes the reliability of criminal adjudications." *Id.* at 403.

[3] Again, one or both these claims may be defaulted or time-barred, but actual innocence excuses either. *Lee v. Lampert*, 653 F.3d 929, 937 (9th Cir. 2011) (en banc); *Smith v. Baldwin*, 510 F.3d 1127, 1139-40 (9th Cir. 2007) (en banc).

### 1. Why and How Innocence Must Be Considered

"[A] counseled plea of guilty is an admission of factual guilt so reliable that, where voluntary and intelligent, it quite validly removes the issue of factual guilt from the case." *Menna v. New York*, 423 U.S. 61, 63 n.2 (1975) (per curiam). Here, Pearson voluntarily pled no-contest, and counsel provided reasonable assistance. Ordinarily, such a plea is an effective bar against a later assertion of innocence, because a defendant makes statements at the plea colloquy that may be used against him. Here, however, the State did not recite the elements or match up its proof to each element, and Pearson was not required to agree to what the State's proof would be. But "just as there are many fair trials but few perfect ones, so flaws are also to be expected" in plea colloquies. *United States v. Dominguez Benitez*, 52 U.S. 74, 83 n.9 (2004) (quoting *United States v. Raineri*, 42 F.3d 36, 45 (1st Cir. 1994) (Boudin, J.)).

To show "actual innocence," Pearson must, at the very least, show it is more likely than not that *no* reasonable juror would find him guilty. *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (noting that this standard is easier for a habeas petitioner to meet than that of *Sawyer v. Whitley*, 505 U.S. 333, 336 (1992)). The assessment is made "in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it)." *Schlup*, 513 U.S. at 328 (internal quotation marks omitted). "'[A]ctual innocence' means factual innocence,

not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (citing *Sawyer*, 505 U.S. at 339, and discussing application of *Schlup*, 513 U.S. at 327-28).

The evidence in the record before this Court is hearsay and multiple hearsay, precisely because Pearson pled no contest. That evidence should be considered unless Pearson offers a compelling reason not to consider it. The only alternative is to shift the burden away from Pearson and back to the State, years after the incident and years after the defendant entered a valid plea.

### 2. Knowledge of Injury

Pearson correctly points out that "Knowledge of personal injury[] is required."[4] Pet. Br. (doc. 2) at 4; *see also* Pet. Br. Ex. (doc. 2-2 at 5); Pet. Br. Ex. (doc. 2-3 at 1-3); Mont. Code Ann. §§ 45-2-103(4), 61-7-103(1) (2007). Construing Pearson's brief very liberally, he might be understood to claim that a reasonable juror could not have found he knew, when he was at the scene of the accident, that someone was injured.

But this claim is based solely on Pearson's unsupported claim that he incurred an injury in the accident that prevented him from knowing what he was doing.

---

[4] The current version of the statute does not mention injury. Effective October 1, 2011, injury is no longer an element of the crime but a factor that raises the statutory maximum penalty. 2011 Mont. Laws ch. 235, §§ 3, 6 (Apr. 20, 2011) (amending Mont. Code Ann. §§ 61-7-103 and -118).

-15-

Counsel explored that possibility, and Dr. Trontel was unable to support it. Dr. Buttram's affidavit does not support it either. A reasonable juror could believe that Pearson did not accurately remember the accident and yet was aware of a high probability of injury. *See, e.g.*, Trontel Report (doc. 13-6 at 11 para. 4, 12 para. 3). Pearson does not adduce evidence so compelling that *no* reasonable juror could find him guilty.

### 3. Driving

Pearson might also be understood to allege that he is entitled to a new trial because his recovered memory that he was not driving is new evidence of his innocence. This new evidence is barely probative. When Pearson did not remember, or remembered differently, he agreed the State had enough evidence to prove him guilty beyond a reasonable doubt. Dr. Buttram's affidavit says only that Pearson "may have" inaccurately remembered the incident at the time or at his change of plea hearing. Buttram Aff. (doc. 13-6 at 17-18). The "grievances" Pearson submitted at the detention center are not evidence of what he complained of, much less of the medical significance of his complaints. *See, e.g.*, Memo and Printout (doc. 13-6 at 19-20); Risk Management Div. File (doc. 13-15 at 5-6).

There simply is no real evidence of actual innocence. These claims, to the extent Pearson makes them, should be denied.

## V. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2254 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Pursuant to a plea agreement, Pearson pled no-contest to leaving the scene of an injury accident. Under the agreement, the State dismissed two other felony charges and reduced the maximum possible sentence from one hundred years in prison to ten. Pearson was sentenced to serve five years in the custody of the Department of Corrections (which allows for community placement rather than prison), and the entire sentence was suspended. Before Pearson entered his no-contest plea, counsel obtained an expert's opinion as to whether Pearson might have been affected by the accident and so not understood what he was doing. The expert's opinion was not favorable to Pearson.

Pearson now seeks a new trial primarily because, months after he pled no-contest and was sentenced, he remembered that he was not driving the car, and he realized he had a mental disease or defect both at the time of the crime and six months later, when he pled no-contest. He also claims he was not competent to enter his plea. These claims are soundly refuted by Pearson's and counsel's statements on the record at the change of plea hearing, as well as counsel's consultation with a mental health expert before Pearson entered his plea.

Pearson's other claims also lack merit. His no-contest plea did not violate his privilege against self-incrimination. Assuming one witness did not remember what he wrote in a statement about the accident weeks later, the witness was not among those the State said it would call in its case-in-chief, and the witness could have testified to what he remembered about the accident anyway. The State did not and had no obligation to test the blood samples it took from the scene of the accident, so it cannot be accused of failing to disclose exculpatory evidence. Pearson did not have a bench trial, so the trial court did not err by failing to obtain his waiver of a jury trial. To whatever extent Pearson intended to claim he is actually innocent – and assuming, for the sake of argument, such a claim is cognizable in federal habeas – he points to no evidence suggesting it is more likely than not that *no* reasonable juror could have found him guilty, and the applicable standard would probably be even higher than

that.

There is no reason to encourage further proceedings in this case. A certificate of appealability is not warranted.

Based on the foregoing, the Court enters the following:

## RECOMMENDATION

1. The Petition (docs. 1, 2, 6) should be DENIED on the merits.

2. The Clerk of Court should be directed to enter by separate document a judgment in favor of Respondents and against Petitioner.

3. A certificate of appealability should be DENIED.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), Pearson may serve and file written objections to this Findings and Recommendation within fourteen (14) days of the date entered as indicated on the Notice of Electronic Filing. If Pearson files objections, he must itemize each factual finding to which objection is made, and he must either identify the evidence in the record he relies on to contradict that finding or explain why the evidence supporting the finding is insufficient or defective; and he must itemize each recommendation to which objection is made and must set forth the

authority he relies on to contradict that recommendation. Failure to assert a relevant fact or argument in objection to this Findings and Recommendation may preclude Pearson from relying on that fact or argument at a later stage of the proceeding. A district judge will make a de novo determination of those portions of the Findings and Recommendation to which objection is made. The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendation. Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

<u>Pearson must immediately notify the Court of any change in his mailing address by filing a "Notice of Change of Address."</u> Failure to do so may result in dismissal of his case without notice to him.

DATED this 9th day of February, 2012.

    /s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate Judge